The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Thank you. You may be seated. All right. Our next case is 24-17-93. Deborah Sheldon v. Allergan Sales, LLC, and we will first hear from Mr. Callaloo. Yes, Your Honor. Good morning. Thank you. May it please the Court. My name is Joe Callaloo of Callaloo & Utter. I'm one of the attorneys representing Ms. Sheldon in this litigation, and I'd respectfully ask for four minutes of rebuttal time for my argument. Yes, sir. Thank you. Your Honor, we're here on a decision where there's not much agreement between the parties, but the parties do agree that the district court's analysis was flawed in this case. The district court simply got it backwards and didn't do the proper analysis required in a False Claims Act situation. In most False Claim Act cases, the court determines falsity and then determines scienter. In this case, the district court punted on falsity, saying both sides could have plausible interpretations of the statute, and because both sides were plausible, you cannot have scienter as a matter of law. Those are the two errors that we bring forth here today. First and foremost, the court cannot punt on an ambiguous statute. The court has to interpret an ambiguous statute and determine its meaning. And secondly, scienter of an ambiguous statute does exist. You cannot say there is no false claim as a matter of law. In fact, the Supreme Court in Schuette v. Super Value said the exact opposite, which is why this case was originally sent back from the Supreme Court to the district court to deal with scienter under Schuette v. Super Value. Unfortunately, the district court did not do so. So in this case, the district court's analysis was flawed on both points. What we would argue is that this court needs to determine what it means under the rebate statute and the rebate agreement and how to calculate the best price. And what the agreement, who voluntarily, year after year, agrees to calculate best price consistent with the terms of the rebate agreement, who agrees to use the best price actually realized, has to combine rebates given to wholesalers, retailers, insurers, and the like. Forrest, as we allege in this case, did not do so. It did not do so intentionally because they had a scheme to increase their business at long-term care pharmacies. And Mr. Sheldon knew this because Mr. Sheldon had worked for the company for 20 years. He was in sales. He managed other sales people as well. He dealt with these contracts, so he knew about the strategy to try to get more business from long-term care pharmacies. And what they did to grease the wheels was to give multiple rebates on the same pill to get that pill into a formulary to get it prescribed to a beneficiary. So they intentionally, deliberately gave two rebates for the same drug unit in order to advance their sales. But when they reported best price to the government, they only included one. So your operative complaint relies pretty heavily on the CMS proposed rule and comment in 2006-2007, that time period. So do you agree that the claims that Allergen submitted without the PBM discount before that period can't properly be considered to have been submitted with the requisite intent? No, Your Honor, because the best price statute goes back to 1991, and there are program guides in both 1991 and 1994 that determined that the government wanted the best deal at the entire time. It engaged in rulemaking in 2006-2007 to confirm it, but the problem goes all the way back to 1991 when the best price statute was first enacted. CMS has gone through multiple rulemaking in 2007, in 2016. They proposed a new rule in 2023 that specifically identified the district court's opinion and said they disagree with the district court's opinion. It can't be any more clear that when CMS writes a rule and says we are aware of district court opinion, it is wrong. Well, perhaps it became clear in 2023, but before that it was not clear. So how could you have a false claim if the rule isn't clear? So there's a false claim going back all the way to 1991, but in 2007, the rulemaking process specifically said that you have to aggregate the rebates to two different entities, and they did it again in 2016. And in 2023, CMS says we told you in 2007 not to do it. In fact, in the record... Excuse me, when you say they're saying, you're saying CMS said you have to aggregate the rebates, what is your basis for that in the record? In the record, we would have this language of the rebate agreement year after year, which talks about prices actually realized, and talks about how to calculate the best price. We have the 2007 rulemaking, Your Honor, which includes a letter from Forrest saying that we are concerned that your language requires us to... Right, and then CMS responds, we do not agree. We do not agree. That's exactly right, Your Honor. We do not agree, and they continue to exchange their policy. So how is that legally binding? And that's what I'm interested in your position on. How is that legally binding on Forrest? We do not agree. Because it warns them away from their interpretation, which is a factual issue under the Sienta analysis, where CMS is saying we are requiring you to stack. The example given was a rebate to a wholesaler and a rebate to somebody else, and Forrest said, we're concerned you want us to aggregate this. And CMS says, yes, we're not changing the language. We are not going to change the policy. You are interpreting it correctly, and they don't do anything. They don't contact CMS. They don't write another letter. There's nothing in the record that they did anything differently. I thought CMS's example in that instance dealt with a rebate, a double rebate to a wholesaler, one up front and then one after the fact. Is that not correct? The comment, Your Honor, it's on page... Give me a record site, and that'll be the best way, I think. JA57-62 is where we cite it in our complaint, and 72 Federal Register 39199. The example is one commentator requested that when best prices determine customary prompt payment discounts extended to wholesalers should not be aggregated with price concessions available to an end customer. Two different entities, and it says that they're concerned about aggregating, and the response is, we do not agree. Both the customary prompt pay discounts and other price concessions available to the end customer are to be included in the determination of best price. A rebate to a wholesaler, a rebate to an end customer, you have to combine them for best price. That's the specific language in 2007. That language occurs in 2016 and occurs in 2023. Okay, we're not considering 2023, are we? I think we're considering 2023 because, one, the allegations in our complaint go to the present. So even though our complaint was filed several years ago, we have multiple allegations that our claims go to the present. So 2016 and 2023 are relevant. Second, the 2023 analysis from CMS specifically says that it has taken this position consistently since the 2007 rulemaking. So if there's any doubt about what happened in 2007, CMS tells us we told them to stack in 2007. That's CMS's position. And so it is relevant to confirm the historical nature of where we are. Okay. Now let me ask you about CMS's wholesaler example. Judge Hollander said, didn't she, that that CMS example ultimately dealt with the wholesaler in both respects? In other words, that there wasn't a separate entity in that example? She interpreted it that way, Your Honor. You're absolutely right. Why was that wrong? Or was that wrong? Do you agree? I believe it was an error, Your Honor, because the example in the language I just read talked about wholesaler and end user, and CMS specifically says combine both of them. Those are two separate entities. But she said that in her analysis, she said it was the same entity. It only dealt with the timing of the payments, didn't she? I think that's an error, Your Honor, and that goes to the idea... But are you agreeing with me that that's what she said? I agree, Your Honor. She also said that the statute was helplessly ambiguous and there's no way to clear it up. Well, that's what courts are for, to clear it up, to tell us what an ambiguous statute means or doesn't mean. That is the role of the court, and you can't punt on that. So this court has to deal with what that statute means. On one hand, and let me be clear, under the False Claim Act claims under Rothschild in this circuit, all I have to do is pose a plausible theory of liability. I have to establish a plausible claim of falsity and plausible allegations of scienter. What is a plausible claim? You have to take the inferences in the favor of the plaintiff. Absolutely. And they could support a claim. Absolutely. Okay, what else do you need? Anything else? That establishes me on falsity, and then I need to have allegations of scienter under Schutte v. Supervalue, whether it's reckless disregard, reckless disregard, deliberate ignorance, or actual knowledge. We've got pages of that in our 179-page, 879-paragraph amended complaint. So the district court says we plausibly pled, but then it threw up its hands and says, well, maybe Forrest plausibly pled. I can't make that determination. At the motion to dismiss stage, it doesn't matter. I should survive a motion to dismiss by construing the facts in a light most favorable to my complaint and construing all inferences in a light most favorable. That's one of the problems we face when we read their brief, and it says, well, we made reasonable inferences. We made reasonable assumptions. I don't know what those were. There's no record of those. There's nothing in the record before this court that says what the reasonable inferences or reasonable assumptions were, because that's a fact issue. But the rebate agreement, you agree the rebate agreement does allow the manufacturer to make reasonable assumptions. It does, Your Honor. And is that that allows you to carry forward to summary judgment because that is something that needs to be determined factually? 100%, Your Honor. The rebate agreement says in the absence of guidance, a manufacturer can make reasonable assumptions and has to keep a record of them. And it's important that that record is either written or electronic. One, we think that there was guidance that warned them away from what they were arguing as we identified in our complaint. Two, I don't know what those reasonable assumptions are because we're at the motion to dismiss stage, and they haven't produced the written record of what assumptions they made. And most importantly on that, I don't know when the assumptions were made, when or what, because what assumptions were made after 2007 rulemaking or after 2016 rulemaking or with respect to the 91 and 94 guidance, all of that matters. It does seem unusual to have a case come to us on a motion to dismiss with such a voluminous record of documents that are outside of the complaint. I will grant you that. I have a question about how we should even consider these CMS guidance from the various years post-Loper Wright. Yes, Your Honor. So Loper Wright, this court's issued a number of Loper Wright decisions over the past several months. Loper Wright still says that we can look to CMS for guidance, and if it's consistent and thorough and within the statutory delegation, it's still appropriate to look to CMS. But is it evidence of scienter? In other words, going against a CMS position? So I would say that... After Loper Wright? So I think Loper Wright deals with the falsity issue, Your Honor. It deals with what is required under the statute and how this court should interpret the statute. Wouldn't it also deal with scienter? Well, scienter, I think, is more of a shooty super value and a factual allegation and a worn away allegation. Because we first need to establish what the statute allows or what the statute requires. And we would argue that even post-Loper Wright, the CMS rulemaking is entitled to greater deference, greater respect than most other type of guidance talked about in Loper Wright context. And the rebate agreement is different because the rebate agreement's a voluntary contract. The rebate agreement is not required by statute. They don't have to sign it. If they don't want to do business with the government, don't sign the rebate agreement. But if you sign the rebate agreement, you're required to comply with it. And that's complying with prices actually realized and combining in all the rebates that are appropriate. So I think Loper Bright helps us with falsity to determine how the statute is read. Factual allegations in our complaint deal with scienter. How are we to interpret this price actually realized language that seems to appear repeatedly throughout the record? So price actually realized talks about the focus on the unit, focus on the drug unit and combining any rebates given to parties associated with it. And we would argue that that clearly means that any should be interpreted broadly, not narrowly for any rebates between an insurer and a retailer or a wholesaler and a retailer. Or in this particular case, the retailer pharmacy and the retailer insurer to get that pill into the long-term care pharmacy. I mean, in this particular situation, as we allege in our complaint, Forrest made a conscious decision to increase its market share at long-term care pharmacies and had to give more than one rebate to do so. So the price actually realized for it to increase its market share included both of those rebates. And that actual price realized is different than it had in other circumstances, but it didn't give the government that value. It didn't give the government. So price actually realized is from the perspective of Forrest, not from the perspective of the purchaser. Absolutely, your honor. And the price actually realized is on a per pill basis in both the best price statute and in the rebate agreement. It talks about focusing on the pill, the unit, not on the transaction. When you read Forrest's brief, they talk about bilateral transactions, individual customer, single entity, lagged price concession. None of those words appear in the best price statute. None of those words appear in the rebate agreement. I've listened to arguments this morning talking about, well, what does the statute say? What does this mean? None of those words that appear throughout Forrest's argument are actually in the best price statute or the rebate agreement. Those talk about focusing on the unit, any rebates that affect the price actually realized need to be included. And that's what CMS has told manufacturers for 30 years. The irony here is that Forrest is asking the court to interpret the best price statute, the rebate statute, to say it's never required stacking. Even though all the manufacturers other than Forrest have listened to CMS say year after year after year, aggregate. They're asking for a get out of jail free card from this court to interpret the statute differently. But don't we, I think at the same time that Forrest is asking questions, you have other law firms asking this similar questions. Absolutely. So that would be indicative of some, there's some confusion or something, right? Which is why Forrest got the answer in the response to rulemaking, not a guidance document to rulemaking. And it's important to know what Forrest did afterwards. Did they change their policies? Did they say, screw you, we're going to go forward? And we don't know that in the record. What we do know is that my client alleged in the complaint that they intentionally and deliberately ignored that advice and continued to go down the path they wanted to. And they intentionally bypassed the DNA process that we describe in our complaint that would have caught these double rebates. Well, what did, you know, you said what did Forrest do? What did CMS do? They opine that they don't agree with Forrest and the other companies, but then do they change the definition? I mean, did they change the rule? Excuse me? They did not change the statutory definition. They did not change the language of the rebate agreement. Everything stayed the same. So they told the manufacturers, here's what we believe. That that's our interpretation. Absolutely, Your Honor. That's correct. Okay. I guess what I'm having trouble is leaping to the point where CMS has given its interpretation. Why is Forrest then violating the law by not agreeing with that interpretation? Because it's a false claim when they don't submit their claims with the proper best price calculation. What is the falsity then? The falsity is not aggregating the rebates. It's not agreeing with CMS's opinion. You're saying failure to agree with CMS's opinion constitutes a falsity? No, Your Honor. I'm saying that the best price statute and the rebate agreement required aggregation. CMS confirmed that in their rulemaking, and it's a violation of the statute and the rebate agreement to submit best price calculations to CMS on a quarterly basis that did not aggregate those claims. That's the false claim. And the answer is they did it intentionally with actual knowledge and reckless disregard for what CMS said, even though they were warned away. And we allege that in the Forrest knew to aggregate the multi-entity concessions. And if you can give me the J.A., that would be great. So it would be in the references to the DNA, which are paragraphs 69 through 71. Which page is in the J.A.? J.A. 69 through 71. And then we also reference that actual knowledge and deliberate ignorance are on multiple pages. But more than just the inference, but where are the specific allegations to show that Forrest knew to aggregate? Well, in our complaint, we go through all of the CMS guidance, and we talk about all of the CMS guidances in 07-2016, and we talk about how CMS told them. So the when we talk about the 2007, the response back that I just read, J.A. 57 through 62 are the pages in our complaint where we specifically talk about the 2007 rulemaking process. And the letter from Forrest to CMS and the CMS response on the commentator is J.A. 62 as well as 72 Federal Register 39199. All right. Thank you. Okay. Could I ask just one other question? How does the fact that Forrest, in your allegations, allowed two rebates in some situations and only one in others, right? How does that show Forrest's motivation to avoid a best price violation rather than Forrest's interest in simply maximizing its profits? Forrest has every right to maximize profit, increase business, come up with marketing schemes and pricing schemes, as long as they give government the best price. Because the whole fundamental basis of the Medicaid rebate statute and the Medicaid program is that the government always wants the best deal. So if Forrest wants to increase business in long-term care pharmacies, it can do so. And it can play with its pricing if it wants to, as long as when it does that, it gives the same deal to the government. Because what it can't do is increase its business, change its pricing mechanisms, come up with cute deals or clever wording and not give the government the best actual price realized under the rebate agreement in the statute. That's the fundamental flaw. Because the government always wants the best deal. And if Forrest gives it to one company, it has to give that same deal to the government. All right. Thank you. Thank you. Yes, sir. Mr. Elwood. May it please the court, John Elwood for Appelli Allergan Sales. This court can affirm the district court's judgment on any of the three grounds outlined in our brief. Relator, however, has to win all three of them. I'd like to focus on falsity and see enter. First, Allergan's statements weren't remotely false. During the first appeal, another panel of this court, the majority held that the plain and natural reading of the rebate statute, which was actually language used by Judge Hollander, and that the best reading of the statute was that the best price entails the lowest price available from the manufacturer, including all price concessions to any one of the listed entities, but not to multiple entities. That's only, you know, you only consider that for its persuasive value now. But I think that it's just as persuasive as it was back in 2002, 2003, I forget when it was. And nothing that has happened since, the vacatur for Schutte, which was a Sienter holding, none of that throws a cloud on that analysis at all. And I'm happy to walk through the court what that is. What Relator is trying to get is not the benefit of the best price. What Congress said is that the government should get the benefit of the best price, the lowest price that the manufacturer gives to its best customer. And what it's asking for here is not a price that Forrest or Allergan gave to any customer. It's asking for a net revenue figure where you cobble together a bunch of discounts along the chain and give it to, and basically, if we don't report that as the best price when it's not a price that anyone pays, we are guilty of a false statement. And that's just not the case. As the prior panel majority said, that is not a price available to any entity. It's a price available to no entity. But it is the price actually realized. It is. I don't believe it is the price actually realized. It is the net revenue realized. If you look at the actual rebate statute, it defines the price as the lowest price available from the manufacturer to any wholesaler or retailer or provider or HMO or nonprofit or government entity. That sets up a bilateral transaction. I mean, you can't say you're going to accumulate little bits of discount from each of those entities when it says it's a price available from the manufacturer to any one of those entities. As the prior panel majority said, when you have all of those single nouns separated by disjunctive orders, it strongly advises against aggregating discounts to multiple entities. And it wasn't just the prior panel. We also cited the decision Gibbons versus Malone from the Second Circuit, where the Second Circuit said, when you're saying purchase or sale of any equity security, that's a singular term. You're not going to say a purchase of this security and a sale of that security. You have to go basically entity by entity. So you're saying the CMS interpretation that is exceedingly clear in 2016 is just plain wrong? I don't think that... Well, to begin with, 2016 is outside the era of the false statements. Well, that's a CNTR issue. It's not a falsity issue. Well, but first of all, the 2016 guidance I think is consistent with our interpretation. I'm happy to talk about that. But it's also beyond the period where they said we made false statements. They only allege false statements until 2014. I understand. That's the CNTR issue. Right. On the issue of the interpretation of the language of the statute, that's the issue of falsity. On that issue, what's the relevance of the language of the... I think the 2016 language is very clear. The 2016... I don't believe that the 2016 for falsity, I think Loper-Bride is an answer for why the 2016 guidance isn't relevant to falsity. But I think that it's also... So we just ignore it? We just ignore what CMS says about the statute? I don't think we have to ignore it, but it doesn't alter what the statute says. An administrative agency can't change what the statute says and our obligation is under the statute. But in any event, I don't think that the 2016 language is a problem because you have to look at... It's not enough to just say, oh, well, they said we disagree. You have to see what they say after disagreeing because every example given, and this is true of both... In 2016, it's 81 Federal Register at 5252 to 53. And there are two examples in the 2007 guidance, which is 72 Federal Register at 39,198 to 199. The same example is given for two of those. The 2016 is also in 2007, given to 2007. But it says what they focus on and why they're disagreeing is because the rebate to two entities, if that rebate flows to the other entity, that's when you count it. That's consistent with our opinion, that basically if you give rebates to both of these entities and one entity gets the benefit of both of those rebates because of how it works, yes, then that adjusts the price realized for that customer. And this is where you look at it as they talk about where the discount is given to a pharmacy benefit manager, where the rebates are designed to adjust prices at the retail or provider level. So exactly as consistent with our interpretation, when that rebate to the pharmacy benefit manager flows to the retail or provider level, that's when you count them. That is with the prior panel majorities reading and with the interpretation we explained to CMS, which is that basically when the rebates flow to one entity, that adjusts the price realized for that entity, and yes, you count that. But that is, again, consistent with our opinion. Imagine now if CMS had written that response to show that it wanted to agree with the relator here. They would have said, of course you count the discount. You have this discount and that discount, you add them up, you put them together. But instead they specified you add them up when they flow to a single entity. Well, Mr. Elwood, if CMS had given the 2023 response in 2016, excuse me, had given the 2016 response in 2007, wouldn't your case be a lot weaker and why not? I disagree. I think the 2016 response is perfectly in accord with us. Yeah. Compare the 2016 where they pretty clearly said that double stacking has to be reported, didn't they? No. And again, I was reading from the 2016 comment there. They say when the discounts flow to one entity, that's when you count it. That's interpretation. It doesn't matter whether they go to a single entity or not. Merely because they're given along the path of the drug sale, you have to add them up. Right. But what I'm getting at, and maybe not doing too well, is that I think that your case is a lot stronger if you were just sitting on the 2007 response. But then I think your case gets more problematic when you get to 2016 response and the 2023 response. And so it seems to me that it's important for you to tell us why we don't consider 2016 and 2023. Well, you don't consider 2023 because it was never even finalized. They put it out there as a proposed reading. And I think that this hurts them in two ways. First, it shows that the government knows perfectly well how to explain a relator's position. It knows how to say you got to stack discounts regardless of whether they're realized by the same entity. They know how to say that. And they didn't say that. Not in 2023, not in 2016, not in 2007. I'd like to talk about the other example from 2007 that my friend Mr. Callow says is so obvious. This is the example of the discount that is the two discounts that are achieved through the wholesaler. Because they say you've got to combine both a prompt pay discount to a wholesaler and then also another discount and customer that is done by a charge back through the wholesaler. Now, as the panel said, this is at JA-286 and the district court in the first opinion at JA-252, or I guess that's, yeah, I think that's the first opinion at 252. She also found it again in this most recent one that when you, a prompt pay discount is like a $1 pill, you give it to the wholesaler for 98 cents. Then say down the road, the wholesaler has to sell to like CVS or somebody at 70 cents because there's a separate agreement that says you got to sell to CVS for 70 cents. That is administered through a charge back. So basically at that point, the wholesaler says I had to give it to them for 70 cents, make me whole. And then the money goes to the wholesaler. And so they have both the prompt pay discount of 2 cents and the 30 cents or whatever to sell it at the 70 cent thing. Both of those discounts flowed through the wholesaler through the charge back. We cited a 1996 case, INRI brand name prescription drugs antitrust litigation, where they recognize the charge back to the wholesaler operate as a discount to the wholesaler. And so this was already well established in 2007. So when we read this in 2007, we go, this is great. Both of these discounts, the reason why you're counting them is because they flow to a single entity. That is, again, consistent with our interpretation. If CMS was trying to say their interpretation is right, they'd say you have this discount and that discount, you always add them up. But no, they specified you add them up when they flow to a single entity. That is our interpretation. Now, I think I also want to point out that it was not just us giving this interpretation to CMS. And they say we were on notice because we said there was language in a preamble. Preambles didn't even count before Loper Bright. Preambles weren't entitled to deference, that Chevron deference, even when Chevron was good law. But we said that perambular language, we said, quote, the proposed rule, the actual regulation, not the preamble, must be interpreted to mean that associated discounts and price concessions are provided to the same entity to whom the drug was sold. We said that. Every other entity essentially in industry said the same thing. Pharma said that. And the most remarkable thing is, even though they said a lot of we disagrees during that, they never said we disagree with that statement. And again, when you look after at all of the CMS commentary to see what they're disagreeing with, their statements after that are all totally in accord with our reasoning. You count the different entities when they flow to a single entity. That's what we're talking about, prices actually realized. It's the price realized to the wholesaler when it aggregates the two-cent prompt pay and the 30% lag discounted from the chargeback. That's what it means to have prices actually realized. That's what we interpreted it to mean. And so I think we've been jumping around a little bit when we're talking both about the scient or talking about the fact that that we told CMS and in fact the whole industry told CMS this is how we read the statute. But there are other reasons why I think it's important to count it that way. Your colleague says that the whole industry submitted their claims based on a stacked calculation. Everyone else did that other than your client. Is that right? I don't know where he's drawing on for that because again, there's nothing in the complaint that I'm aware of on that. It's in the record that Pharma submitted its own brief. He pointed out the fact that other people submitted similar letters to CMS. And so all we have from the complaint is that every other manufacturer that he's talking about submitted the same kind of letter saying this is how we interpret our obligations. And the reason why that makes sense is because as the prior panel said, the rebate statute talks about rebates that are available from the manufacturer to individual parties. And what Mr. Tallow is talking about is not a price that's available to anybody. Nobody can say add together all of these rebates and give me the drug for that price. Nobody pays that price. And in addition, when you look at the legislative history, this is what Congress said it wanted. It said it wanted to quote give Medicaid the benefit of the best price for which a manufacturer sells a prescription drug to any public or private purchaser, unquote. If you look at their most recent brief, they now are disclaiming this is the related brief at page 20. They're now saying they don't want the lowest amount that any one particular purchaser pays. What they want is a net revenue figure that nobody pays. And that simply isn't what the rebate statute permits. Moving on to, let me see here. I think moving on to the scienter requirement, I think the important thing here to remember is that basically just pleading what our mental state was, I don't think you can say that we are plausibly guilty of willfully defrauding the government. What's missing from Sheldon's scienter pleadings? What's missing is, for starters, he never says how we knew that this was false. He says we knew it from the language of the statute. And that's why the judge below went to such lengths talking about why she addressed falsity the way she did, because it's relevant to scienter. They said we knew because of the language of the statute. But that obligation is definitely not from the language of the statute. As I say, it's not even clear from the language of the regulations. It's also, I think when you're talking about recklessness and willful ignorance or deliberate ignorance, one of the elements of deliberate ignorance that he has to plead is the fact that we were aware that we might be wrong, and we didn't take the steps necessary to clarify that. We told the regulator... Sheldon is saying that you were warned. Sheldon is saying you were warned in 2007, aren't they? They are saying that, but we're saying that we took the step. It says right there in the pleading that we took the step to try to clarify our obligations. Instead of being silent, which is what it is, it's an ostrich thing. It's not an ostrichy move to tell the regulator in print this is how we interpret our obligation. That is taking a step to clarify what your obligation is. The False Claims Act scienter standard says reckless disregard for the truth or the falsity of the claim. It doesn't say reckless disregard for the falsity of the claim. How should we interpret the inclusion of truth or falsity as part of the scienter requirement? I think because we're telling the regulator this is our interpretation of the statute, that will resolve what the truth or falsity is. We were seeking out guidance about whether our interpretation is correct. That shows we were not trying to be deliberately ignorant about the truth or falsity of the claim. We're trying to find out what we mean, what the regulator interprets this to mean. We told them what our position was. As I say, they didn't tell us that our position was incorrect. I think that addresses both deliberate ignorance because we did seek guidance. That's not burying our head in the sand. That's us seeking guidance. I think it addresses recklessness, which is the idea that we're taking an unjustifiable risk. The risk is not unjustifiable when you tell the regulator, this is what we think. Are we right about this? Then they didn't say that position is wrong. You've got to stack discounts regardless of who they flow to. It seems to me that Sienta and the Supreme Court has said this in shoot is a subjective standard, which almost by definition means it's a question of fact. In discovery, there could be emails between executives at the company saying, let's submit this letter from a lawyer asking the question. Then that'll satisfy the requirement that we've checked in to see if what we're doing is right. We have nothing because all we have are public documents, a lot of them, but we have no depositions, we have no documents, we have no discovery at all. Yet, we're being asked to decide what seems to me fundamentally a question of fact at a motion to dismiss stage. It's not a question of fact. The question is the adequacy of the pleadings. Shootie was a case that happened at the motion for summary judgment stage after there was already evidence that the company there, Super Value I think it was, believed that that position was wrong. Not only that, but there was also the decision that the position was wrong. The courts had already determined that. It didn't address pleading standards at all, but you still have to say, what did they plead? All we have is a conclusory allegation that we knew it was wrong. Judge Decomplin court said that they have to do more than just a conclusory allegation that the decision is wrong. You have to, let me see here, an FCA plaintiff must set forth specific facts to support an inference of knowledge. There they said there's no allegations about employee conversations or efforts to sweep stuff under the rug or anything like that. Mr. Kala was emphasized that the relator in this case worked at this company for 20 years, so it's not asking too much to say, tell us why you believe they knew that it was false. In addition to, the only things they really point to, and this is at page 49 of their brief, to say that we knew that it was false were the language of the regulations and statutes themselves. And as I hope I've explained by now, that just doesn't put us on notice if we're supposed to stack discounts. I think that's the wrong reading of all of them, but also the idea that they had this audit. And as the district court found in this case, under Iqbal and Twombly, when there's an obvious, innocent explanation for that conduct, it's not enough to take something from beyond the realm of the conceivable to the realm of plausible. And there are, I think, at least two reasons why that's just not a conceivable or just not a plausible interpretation. First is, as Judge Keenan already noted, the fact that if we were so worried this conduct was illegal, why were we only doing the audit part of the time? It's like, we're not going to impress our regulator if they said, oh, well, you stopped doing double discounts for some of your business lines when we let other stuff go. And so the far more plausible explanation is we were doing it for business reasons, as Judge Keenan suggested. In addition, you have to look at the timing of that. That was in 2008. That was just after we got done with the 2007 rulemaking, where we told our regulator, this is our interpretation. And you're not going hide anything from the regulator when you say, this is our interpretation. So the far more plausible interpretation is that we understood this, we were doing this, the audits for business purposes. All right, Mr. Elwood, your time is up. Thank you. Thank you. Thank you. A few points of clarification. Judge Berner, you hit the nail on the head when you asked my adversary, isn't that actual price realized? And he said, oh, no, it's net revenue. It's not. It's actual price realized. That's the exact issue in the case. That's exactly what they didn't report. But isn't it actual price realized by whom? By Forrest on the pill. That's the critical difference. My counsel on the other side keeps saying it's on a sale. It's on a manufacturer. That's not what the rule says. Look at the pill and the actual price realized on the pill unit. You asked the perfect right question. It was Dodge. And that's the problem with their position. The second thing is we have a fundamental dispute about this 2016, Judge Keenan. So I pulled the language. You asked the right question as well. Wasn't it clear in 2016? Here's what CMS said. A manufacturer is responsible for including all price concessions that adjust the price realized by the manufacturer for the drug in his determination of best price. If a manufacturer offers multiple price concessions to two entities for the same drug transaction, such as rebates to a PBM, where the rebates are designed to adjust price at the retailer provider level and discounts to a retail community pharmacy's final drug price, all discounts related to that transaction, which adjusts the price available from the manufacturer, should be considered in the manufacturer's final price of the drug when determining the best price to be reported for the drug. And we believe this policy is consistent with current section 447.505E3. That's on page 31 of our complaint. It's 81FR5170. It's completely the opposite of what my counsel said was the case. There is no question of what they said in 2016. But I think his argument is that those discounts flow to one entity, right? Right. He's trying to say that when you adjust the price realized, that I'm looking at net revenue. I'm looking at the actual price realized for a particular unit. That's exactly what CMS advised. And the frustration with where we are today is that, as you said, Judge Berner, we don't know what they did. Forrest comes up and I wrote this down. We read the 2007 and this was great. We have business reasons for what we're doing. We have no idea because there's no record. And what they're asking you to do is accept as true what they write in a brief and what they say at this podium that is inconsistent with what we allege in the complaint. Because in our complaint, we say they were not reasonable. They acted with scienter. They acted with deliberate disregard to what was happening in 2007. What they read and what they did is exactly what the point of discovery is, which we don't have. Does the 9B standard apply to the pleading? Is that the pleading requirement for scienter? I'm sorry, I didn't hear you, Your Honor. The heightened pleading standard for fraud, rule 9B, does that apply? No. All we have to allege is plausibility under Rothschild and the Fourth Circuit. And we did that. You have to accept our allegations as true and our allegations are contrary to what they keep telling us in briefs and at the podium. If what we allege is true and inferences are in our favor, we can't accept, oh, they did it right or they did it for business purposes. We need to know what happened. My counsel on the other side says we asked CMS for guidance. The timing of that is critical because that was before rulemaking. CMS responds in 2007 and there's nothing in the record, not even in their briefs and not in presentation, of what happened afterwards. So respectfully, the district court opinion is wrong because it dealt with, it didn't deal with the statute and it dealt with scienter improperly. This court should either remand back to get it right or it should interpret statute to require stacking, find that our claims are plausible, and then send it back. Under either situation, the district court must be reversed. Thank you. All right. Thank you. All right. We will step down and greet counsel and that is our final case for the day. Thank you.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, Barbara Milano Keenan